UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **DERRICK MCCORMICK,** | } |
| | } |
| Plaintiff, | } |
| | } CASE NO. 4:12-CV-4032-SLB |
| v. | } |
| | } |
| **CAROLYN W. COLVIN,**[1] | } |
| **Commissioner, Social** | } |
| **Security Administration,** | } |
| | } |
| Defendant. | } |

## MEMORANDUM OPINION

Plaintiff Derrick McCormick ("plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Upon review of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the defendant in this suit: "Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."

## PROCEDURAL HISTORY

Mr. McCormick initially filed an application for a period of disability, DIB, and SSI on July 27, 2009, alleging a disability onset date of December 8, 2008, (doc. 5-6 at 2; r. 129), due to "Bipolar; possible PTSD," (doc. 5-7 at 6; r. 178).[2] After the Social Security Administration ["SSA"] denied his application, he requested a hearing before an Administrative Law Judge ["ALJ"], which was held on March 4, 2011. (Doc. 5-3 at 27; r. 26.) After the hearing, the ALJ found that plaintiff did not have an impairment or a combination or impairments listed in, or medically equivalent to one listed in, the Listings of Impairments. (Doc. 5-3 at 30; r. 29); *see* 20 C.F.R. § 404.1520(d). The ALJ also found that plaintiff retained the residual functional capacity to perform work-related activities at all levels of exertion, with certain restrictions unrelated to exertion, (doc. 5-3 at 31; r. 30), and that he was "capable of performing [his] past relevant work as a shipping and receiving weigher," (doc. 5-3 at 34; r. 33). In light of these findings, the ALJ found that Mr. McCormick was not disabled from December 8, 2008 through the date of the decision, March 21, 2011, and denied his request for a period of disability, SSI, and DIB. (*Id.*)

Plaintiff then requested the Appeals Council to review the ALJ's decision. (Doc. 5-3 at 22; r. 21.) The Appeals Council found no reason under its rules to review the ALJ's

---

[2]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record. When the document cited is duplicated in the bound physical copy of the transcript of the entire record of the proceedings, the page number of that transcript is also included, ["Doc. ___; r ___."].

decision, and denied his request for review. (Doc. 5-3 at 8; r. 7.) Therefore, the ALJ's decision is the final decision of the Commissioner. (*Id*.)

Following denial of review by the Appeals Council, plaintiff filed an appeal in this court. (Doc. 1.) He requests that this court reverse the Commissioner's decision or, in the alternative, remand the case for further consideration. (Doc. 9 at 14.)

## **STANDARD OF REVIEW**

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted)

The court reviews the Commissioner's conclusions of law de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## DISCUSSION

### A. THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability, SSI, and/or DIB. *See* 20 C.F.R. § 404.1520(a)(1)-(2); 20 C.F.R. § 416.920(a)(1)-(2); *Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for DIB/SSI] if [he] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also* § 416(i)(1); § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

**1. Substantial Gainful Employment**

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).[3] If the claimant

---

[3] 20 C.F.R. § 404.1572 and § 416.972 define "substantial gainful activity":
(a) *Substantial work activity.* Substantial work activity is work activity that

4

is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. § 404.1520(b); § 416.920(b). "Under the first step, the claimant has the burden to show that he is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).

The ALJ found that although plaintiff had worked since his alleged onset date, the work did not rise to the level of substantial gainful activity. (Doc. 5-3 at 29; r. 28.)

**2. Severe Impairments**

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c); § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); § 1382c(a)(3)(D). The regulations

---

involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.
(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); § 416.920(c). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a); § 416.921(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523; § 416.923. A claimant has the burden to show that he has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had the following severe impairments: "mood disorder and history of special education." (Doc. 5-3 at 29; r. 28.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); § 404.1525; § 404.1526. Listed impairments are so severe that they prevent an individual

from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d); § 416.920(d). The claimant has the burden of proving that his impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (Doc. 5-3 at 30; r. 29.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that his impairment prevents him from performing his past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [the Commission's] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1560(b); § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him] to learn to do it." 20 C.F.R. § 404.1560(b)(1); § 416.960(b)(1). If the claimant is capable of performing his past relevant work, the Commissioner will find

he is not disabled. 20 C.F.R. § 404.1560(b)(3); § 416.920(f). The claimant bears the burden of establishing that the impairment prevents him from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to unskilled work. He is prohibited from working around hazardous machinery and unprotected heights. In addition, he is limited to only occasional contact with the general public.

(Doc. 5-3 at 31; r. 30.)

The ALJ found that plaintiff could perform his past relevant work as a shipping and receiving weigher, which a vocational expert testified was light and unskilled. (Doc. 5-3 at 34; r. 33.) Therefore, the ALJ found that plaintiff was not disabled. (*Id.*)

## B. MR. MCCORMICK'S CLAIM

Plaintiff has three bases for this appeal. First, plaintiff argues that the ALJ failed to apply the proper legal standards for determining that plaintiff can perform past relevant work. (Doc. 9 at 5.) Second, plaintiff argues that the ALJ failed to consider all of plaintiff's impairments and all of plaintiff's impairments in combination. (*Id.* at 8.) Third, plaintiff argues the ALJ improperly drew an adverse inference from plaintiff's lack of medical treatment. (*Id.* at 12.) The court finds the first and third argument without merit and any error that the second argument identifies harmless.

**1. Plaintiff's first and third arguments**

Plaintiff argues that the ALJ "failed to consider all the duties of Plaintiff's past work and failed to explicitly explain the basis for the findings." (*Id*. at 5.) The court disagrees. As the Commissioner notes, the ALJ properly relied on a vocational expert in finding that the duties of plaintiff's past relevant work were compatible with the RFC the ALJ assigned him. (Doc. 10 at 6-7 (citing 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2)).) In assigning plaintiff's RFC, the ALJ relied on substantial evidence, as discussed below. The ALJ adequately explained the bases for his step four findings. (*See* doc. 5-3 at 31-34; r. 30-33.)

Plaintiff also argues that the ALJ drew an adverse inference from the lack of medical treatment evidence and that this resulted in an improper decision. (Doc. 9 at 12.) An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . ." SSR 96-7p; *see also Rahman v. Astrue*, 2012 U.S. Dist. LEXIS 164600 (N.D. Ga. Sept. 13, 2012). However, an unexplained failure to seek treatment is a proper factor for the ALJ to consider. *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984). The ALJ's opinion states: "In terms of the claimant's alleged impairments, the longitudinal medical record reflects that the claimant has not seen a psychiatrist in over 2 years." (Doc. 5-3 at 32; r. 31.) It is unclear if the ALJ drew any inference from this information, but the ALJ did note on the same page that plaintiff was

9

currently seeing a therapist. (*Id.*) It does not appear that the ALJ drew an inference from plaintiff's lack of treatment that affected the ALJ's determination.

**2. Plaintiff's second argument: Consideration of all the plaintiff's impairments and in combination**

When a claimant has multiple or combined impairments, "the ALJ must consider the combined effects of all his impairments" when evaluating a claimant's RFC. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). The ALJ is required to make "specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments" are disabling. *Id.* As a result of this requirement, a claimant may be found disabled even though no individual impairment is disabling. *Id.*

Plaintiff argues that the ALJ failed to consider the combination of all plaintiff's impairments, including bipolar disorder, post-traumatic stress disorder ("PTSD"), and depression with suicidal thoughts, when determining whether the impairments were of a sufficient medical severity to qualify for disability. (Doc. 9 at 8-12.) The ALJ did not list these conditions as "severe," meaning that they were not "more than a slight abnormality or a combination of slight abnormalities that cause more than minimal functional limitations." (Doc. 5-3 at 29; r. 28 (citing 20 C.F.R. § 416.924(c)).) Instead, the ALJ found that plaintiff had a severe impairment of "mood disorder," (doc. 5-3 at 29; r. 28), but not bipolar disorder, (doc. 5-3 at 34; r. 33).

Since the only medical evidence that could support a finding of mood disorder comes from Dr. Summerlin's report, the court will assume that the ALJ meant mood disorder as coded "296.90" by Dr. Summerlin. (*See* doc. 5-8 at 34; r. 258.) However, "mood disorder" apparently embraces the possibility of bipolar disorder: "This category includes disorders with mood symptoms that do not meet the criteria for any specific Mood Disorder and in which it is difficult to choose between Depressive Disorder Not Otherwise Specified and Bipolar Disorder Not Otherwise Specified (e.g., acute agitation)." Diagnostic and Statistical Manual of Mental Disorders 410 (4th ed. 2000) ["DSM-IV-TR"]. The fifth digit of the code will sometimes indicate the status or severity of the condition, *id.* at 412, but in 296.90, "0" means "unspecified," *id.* at 413. It is odd, then, that while the ALJ found a severe impairment of "mood disorder," the ALJ took issue with plaintiff's "history of bipolar disorder." The ALJ's opinion addresses the issue a number of times.

The ALJ recounted, without comment, plaintiff's Disability Report, in which plaintiff claimed that "he has bipolar disorder and possible posttraumatic stress disorder." (Doc. 5-3 at 31; r. 30.) The ALJ acknowledged that the records from Keel and Associates "reflect a history of bipolar disorder, but that the claimant is not having any symptoms and not taking his medications." (Doc. 5-3 at 32; r. 31.) The ALJ does not elaborate on the significance of this history, however, and goes on to "note" that the diagnosis was "by a CRNP [Certified Registered Nurse Practitioner], not a psychologist." (*Id*.) This is problematic for a number

11

of reasons: (1) on both visits at issue, the records were signed by a physician,[4] (doc. 5-8 at 54-55; r. 278-79); (2) it is ambiguous as to whether the CRNP made the diagnosis in the records or whether the CRNP was merely writing down what the physician directed; (3) on the first visit, it appears that the physician, not the CRNP, wrote, "Impression: Bipolar disorder," (doc. 5-8 at 55; r. 279).

In the next paragraph, the ALJ acknowledges that treatment records from C.E.D. Mental Health Center diagnose plaintiff with bipolar disorder, but again discredits that diagnosis by "not[ing] that this diagnosis was by a therapist and not a psychologist." (Doc. 5-3 at 32; r. 31.) Discrediting the diagnosis for that reason, however, is unpersuasive, because a "Medical Doctor or Licensed Psychologist" signed the diagnosing record saying "I concur with the above diagnosis . . . ." (Doc. 5-8 at 63; r. 287.)

Then the ALJ references notes from a September 9, 2009 visit and claims that "[t]he claimant's self-diagnosed bipolar disorder was not supported by the record, and the psychiatrist did not lend it any credence at this visit." (Doc. 5-3 at 33; r. 32.) But the full sentence in the psychiatrist's notes reads: "He attributes [irritability and mood swings] to a self diagnosis of bipolar disorder, which he reports has been confirmed by a primary care doctor in the past." (Doc. 5-8 at 74; r. 298.) The psychiatrist did not dismiss plaintiff's concerns outright: the first axis of the "Diagnostic Impression" reads "Major depressive disorder, recurrent, moderate," and the second axis reads "R/O Personality disorder NOS."

---

[4]The only reasonable import of this fact would be that the physician endorsed whatever the CRNP had written down.

(Doc. 5-8 at 75; r. 299.)[5] It would be unreasonable to conclude, if that is what the ALJ is impliedly doing, that these notes refute other diagnoses of plaintiff's alleged bipolar disorder.

The ALJ gave "significant weight" to the opinions of a non-examining physician, Dr. Estock, as expressed in the doctor's "Psychiatric Review Technique." (Doc. 5-3 at 34; r. 33.) However, the ALJ qualifies that weight, without any independent reason, by excluding Dr. Estock's finding of "a medically determinable impairment" of "bipolar [disorder]." (Doc. 5-8 at 38; r. 262.) This is troubling since the ALJ did not articulate a valid reason for discrediting such a finding. *See Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring specially) (explaining that an ALJ cannot ignore a medical professional's diagnosis and substitute "his own hunch or intuition"); *Lewis v. Astrue*, No. 8:08-CV-546-T-TBM, 2009 WL 1659365, at *6 (M.D. Fla. June 15, 2009) ("[Where an assessment by a doctor was fully consistent with the substantial evidence and thus deserving of significant weight], the ALJ was not at liberty to pick and choose those portions of the RFC assessment that favored his conclusion and ignore a portion that, in this case, did not.").

---

[5]"R/O" means "rule out," medical shorthand for noting when a diagnosis is uncertain. *See* AMERICAN MEDICAL ASSOCIATION, OFFICIAL CODING GUIDELINES: ICD-9-CM OFFICIAL GUIDELINES FOR CODING AND REPORTING, Oct. 1, 2008, at 39, *available at* http://www.ama-assn.org/resources/doc/cpt/icd9cm_coding_guidelines_08-09_sm.pdf (last visited Feb. 24, 2014) ("If the diagnosis documented at the time of discharge is qualified as "probable", "suspected", "likely", "questionable", "possible", or "still to be ruled out", or other similar terms indicating uncertainty, code the condition as if it existed or was established.").

The ALJ discusses certain "indicat[ions]" in the 2007 medical records from plaintiff's treating physician, Dr. Hamer, (doc. 5-3 at 32; r. 31 (citing "Exhibit 3F pp. 4, 7" (doc. 5-8 at 17 & 20; r. 241, 244))), but does not mention Dr. Hamer's impression of plaintiff's "Bipolar illness Type 2[6] [and] PTSD." (Doc. 5-8 at 17; r. 241.) The ALJ should have acknowledged Dr. Hamer's diagnosis. *See Luckey v. Astrue*, 331 F. App'x 634, 640 (11th Cir. 2009) ("Most alarmingly, the ALJ omits [Dr.] Graham's ultimate diagnosis altogether—'probable anti-social personality disorder.'").

The ALJ gave "substantial weight to [the Agency's examining psychologist] Dr. Summerlin's assessment that reflects the claimant does not have a psychological disorder[] which would cause him to be unemployable." (Doc. 5-3 at 33; r. 32.) The court will assume that the ALJ was relying for the most part on the assessment itself, not the psychologist's conclusion that plaintiff was not "unemployable." *See Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. § 404.1527(d), § 416.927(d)) ("A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work,' is not considered a medical opinion and is not given any

---

[6]"The essential feature of Bipolar II Disorder is a clinical course that is characterized by the occurrence of one or more Major Depressive Episodes . . . accompanied by at least one Hypomanic Episode . . . . The symptoms must cause clinically significant distress or impairment in social occupational, or other important areas of functioning . . . ." DSM-IV-TR at 392-393.

special significance . . . but will be taken into consideration."). The ALJ claims that Dr. Summerlin's report is "generally consistent with the record as a whole," but it is the only doctor's report cited by the ALJ that does not even mention plaintiff's diagnostic history of bipolar disorder.

The ALJ's seemingly contradictory finding in step two, and his efforts to discredit diagnoses of plaintiff's bipolar disorder, are at least perplexing. However, the court finds that any legal error is harmless. Whatever the ALJ's thoughts on plaintiff's alleged bipolar disorder, he credited any and all functional mental limitations that the evidence would support in his findings on plaintiff's RFC. *See Packer v. Comm'r of Soc. Sec.*, No. 13-11578, 2013 WL 5788574, at *2 (11th Cir. Oct. 29, 2013) (finding that even if ALJ erred in not finding certain conditions severe, it was harmless because "the ALJ thoroughly considered the entire record and accounted for *all of* [plaintiff's] *functional limitations*") (emphasis added). Plaintiff does not identify and the court does not see how his RFC would be different if the ALJ recognized that plaintiff's alleged bipolar disorder was consistent with the record and a finding of "mood disorder."

In its brief, the Commissioner notes that "the records from Alexandria Medical Clinic and from Keel & Associates are from 2007—before Plaintiff alleges he became disabled." (Doc. 10 at 9.) As is evident in the discussion above, however, diagnoses of plaintiff's bipolar disorder did not end in 2007, and a June 25, 2010 Keel & Associates record lists bipolar disorder as an impression. (Doc. 5-8 at 55; r. 279.) The Commissioner argues that "a

15

diagnosis standing alone is insufficient to show that an impairment is severe." (Doc. 10 at 9.) However, plaintiff's case presents more than a "mere diagnosis." Dr. Summerlin noted that plaintiff had "mild to moderate emotional symptoms affecting personal, social, and occupational functioning," (doc. 5-8 at 34; r. 258) (caps omitted), and Dr. Estock's functional limitation report is consistent with this, (doc. 5-8 at 45; r. 269). Another report diagnosing plaintiff with bipolar disorder identifies problems that are presumably related to this diagnosis: significant treatment issues of "(1) easily angered/irritable; (2) poor sleeping—suicidal ideation [and] some [homicidal or harmful] ideation (no plan); (3) depression . . . ." (Doc. 5-8 at 62-63; r. 286-87.)

The Commissioner also argues that even if the ALJ erred in step two by not including bipolar disorder as a severe impairment, that error was harmless because the ALJ found that plaintiff had at least one severe impairment, "mood disorder," and continued on to steps three and four. (Doc. 10 at 10.) The Commissioner cites cases that stand for the proposition that when an ALJ errs in step two by failing to find that a certain impairment is severe, that error is harmless if the ALJ finds at least one severe impairment, because the ALJ considers "all of his impairments in combination at later steps in the evaluation process." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011). In other words, step two is merely a "filter" that, once breached, is unimportant. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). This makes sense: in step three and four "the ALJ must consider the applicant's medical condition taken as a whole," and so has a chance to correct any step two errors. *See*

*id.*; *see also Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 & n.3 (11th Cir. 2010) (finding that "[e]ven if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless" because the ALJ considered "all of Heatly's impairments (whether severe or not) in combination" when discussing his medical history, "the entire record," and his limitations due to pain). This holistic consideration includes "impairments" that did not combine to form a "severe impairment," sometimes called "nonsevere impairments." *See Jamison*, 814 F.2d at 588; *Heatly*, 382 F. App'x at 825.

The ALJ found that "[a]lthough the medical evidence establishes that the claimant has some impairment, the residual functional capacity in this decision accommodates the claimant's limitations and functional abilities and it is supported by the medical record." (Doc. 5-3 at 33; r. 32.) So while the ALJ considered plaintiff's limitations a result of his "mood disorder," and not his alleged bipolar disorder, the RFC is unaffected by that distinction. No materially different limitations appear in medical records characterizing plaintiff as suffering from bipolar disorder or PTSD versus records characterizing him as suffering from mood disorder. The ALJ credited the limitations imposed by Dr. Estock. (Doc. 5-3 at 33-34; r. 32-33.) The RFC limits plaintiff to unskilled work and "only occasional contact with the general public." (Doc. 5-3 at 31; r. 30.) Plaintiff does not point to "any *limitations* above and beyond those assessed by the ALJ." *Packer*, 2013 WL 5788574, at *2

(emphasis added). Therefore, the court finds that the ALJ relied on substantial evidence in reaching his conclusion notwithstanding any error in failing to include other alleged impairments as severe impairments.

## CONCLUSION

Based on the reasons stated above, this court is of the opinion that the Commissioner's decision is due to be affirmed. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 10th day of March, 2014.

*Sharon Lovelace Blackburn*
_____
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE